# EXHIBIT 1

IN THE CIRCUIT COURT OF FORREST COUNTY, MISSISSIPPI

WILLIAM VINEYARD                                                    **PLAINTIFF**

V.                                            CIVIL ACTION NO. H19 - 0249

WAL-MART, INC., WAL-MART STORES,
INC. ASSOCIATES' HEALTH AND WELFARE
PLAN, and LINCOLN LIFE ASSURANCE
COMPANY OF BOSTON                                                  **DEFENDANTS**

**FILED**

DEC 0 6 2019

*Chris Willis*
**FORREST COUNTY CIRCUIT CLERK**

---

## COMPLAINT
## JURY TRIAL REQUESTED

---

William Vineyard (hereinafter "Vineyard") files this Complaint against the Defendants and in support states:

### PARTIES

1.      Vineyard is an adult resident citizen of Forrest County, Mississippi.

2.      Wal-Mart, Inc. (hereinafter "Wal-Mart") is a corporation with its principal place of business in Arkansas.

3.      Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (hereinafter "LTD Policy") is the ERISA Plan providing disability benefits to Vineyard.

4.      Lincoln Life Assurance Company of Boston (hereinafter "Lincoln") is a corporation with its principal place of business in Massachusetts.

### JURISDICTION AND VENUE

5.      This court has subject matter jurisdiction.  Vineyard asserts a private right of action for damages related to denial of long term disability (LTD) benefits, losses in excess of the minimum jurisdiction of this court, related to a contract substantially performed in Forrest

1

County, Mississippi.  Vineyard became disabled while working in Forrest County, Mississippi, and key witnesses and documents are located in Forrest County, Mississippi.

## FACTS

6.      Vineyard has worked for Wal-Mart as an assistant manager for many years, and a copy of the job description for his work is attached as Exhibit "A."  His job, among other requirements, requires him to frequently stand, squat, work overnight, occasionally travel, move heavy objects, lift heavy merchandise, carry large products and engage in extensive physical manual labor.  Vineyard has been a trusted employee of Wal-Mart for many years, dutifully performing his work at a superior level, maintaining compliance with all of his job functions, acting as a team player for his employer, and exemplifying the attributes of a model employee. Unfortunately, the demands of his job, along with his numerous underlying medical conditions, have caused him to be unable to perform substantial parts of his own occupation, requiring extensive medical treatment in Hattiesburg, Mississippi, with excellent medical doctors including, but not limited to, Dr. S. Mark Borganelli, cardiology, and Dr. Chad Diamond, family medicine.

7.      Vineyard prefers to continue working at Wal-Mart, but his medical conditions have rendered him unable to perform the essential functions he regularly undertakes in his own occupation and job title with Wal-Mart.

8.      For many years, Vineyard has participated in Wal-Mart's disability plan known as Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (LTD Policy), a long term disability policy providing certain benefits and coverages.  The plan is sponsored by Wal-Mart for eligible employees of the company and uses its disability policy as a marketing and recruitment tool for its employees.  See copy of the LTD Policy attached as Exhibit "B."

9.      Despite attempting to return to work, Vineyard's Hattiesburg doctors have advised him against returning to work in his own occupation.  Accordingly, Vineyard made a claim for short term disability benefits which, in accordance with the terms of the plans, was reviewed, accepted, and benefits were paid.  Shortly thereafter, the Defendants hired a biased physician from out of state to review the medical records and write arbitrary and capricious statements, without supporting documentation, many of which were in conflict with the objective opinions of the Hattiesburg local doctors, stating that Vineyard could work in some occupation.  Of interest, despite the unsupported, arbitrary and capricious opinions of the out of state doctor hired by the Defendants, co-workers of Vineyard at Wal-Mart have provided undisputed affidavits attesting to their personal knowledge of Vineyard's inability to work in his own occupation, in support of the well documented record and file provided by the local Hattiesburg doctors.

10.      After a denial of the claim of benefits, Vineyard filed an appeal through the policy administrative process and, rather than providing am objective review, the Defendants doubled down, paid additional out of state doctors who have not treated Vineyard, some of whom wrote incomplete and inconsistent statements about Vineyard, inclusive of favorable opinions, all for the purpose of rubber stamping the original decision to deny benefits, a cold, arbitrary, calculated, and capricious decision by a wealthy company which did not take the time to talk to Vineyard himself, contact his counsel, or give objective weight to the overwhelming evidence of the Hattiesburg doctors and other witnesses who attest that Vineyard is unable to work in his own occupation.

11.      Defendants have arbitrarily refused to recognize the diagnostic opinions of no less than three medical advisors, comprising the team of medical personnel associated with Vineyard's illness and treatment for his declining health over the past several years.  Vineyard

3

has been hospitalized for extensive periods of time, continues to undergo treatment, has been

referred for out of state for treatment due to his various illnesses, and while the totality of his

illnesses have not been completely determined, the Defendants have arbitrarily and capriciously

used the absence of a definitive cause as justification to deny benefits, when the actual issue,

under the LTD Policy, is whether Vineyard is capable of performing the essential functions of

his own occupation, not the cause of his maladies.

12.     The Defendants' reliance on purchased opinions from hired doctors who are

completely unacquainted with Vineyard and his treatment and are located in an entirely separate

geographical region of the United States smacks of bias and prejudice.  Their reliance upon

paper reviewing doctors over the physically present and treating doctors is misplaced.  Federal

courts have recently and clearly stated,

> [p]lan administrators may not arbitrarily refuse to credit a claimant's
> reliable evidence, including the opinions of a treating physician." *Black &*
> *Decker Disabiltiy Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155
> L.Ed.2d 1034 (2003). Accordingly, following the Supreme Court's
> opinion in *Nord*, even though courts have recognized that the opinions of
> treating physicians should not necessarily be accepted over those of
> reviewing experts simply because the treating physicians physically
> examined the claimant," reliance on an independent file review to the
> exclusion of equally credible evidence of the plaintiff's treating physician
> may nevertheless be inadequate under the arbitrary and capricious
> standard. *Reid v. Metro. Life Ins. Co.*, 1:11-CV-2422-AT, 2013 WL
> 1932659 (N.D. Ga. Mar. 29, 2013).

Defendants' dismissal of Vineyard's claim is both arbitrary and capricious, considering the

denials were rendered in the face of a consensus of medical providers, all indicating the direct

opposite medical conclusions; and without any rational explanation or accounting for this gross

variation of the Defendants' medical conclusions. The Fifth Circuit has recently held "A plan

administrator abuses its discretion if it acts "arbitrarily or capriciously." *Meditrust Fin. Servs.*

*Corp. v. Sterling Chems., Inc.*, 268 F.3d 211, 214 (5th Cir. 1999). A decision is arbitrary and

capricious only if it is 'made without a rational connection between the known facts and the decision or between the facts and the decision." *Truitt v. Unum Life Ins. Co. of America*, 729 F.3d 497 (5th Cir. September 6, 2013).

13.     Defendants are required to administer a plan that provides a neutral tribunal or decision-making body to render decisions regarding disability claims. Defendants have refused to do that and have, instead, hired their own persons to render these decisions. The contracted provider operates under a conflict of interest pursuant to *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Moreover, these type providers are encouraged to deny claims, even when, as in the case at hand, there is no evidence to support the denial and all of the evidence conclusively supports paying the claim.  Defendants have not only denied the claim of Vineyard in bad faith, but they have also orchestrated a scheme whereby its employees were guaranteed to deny Vineyard's claim and all other persons similarly situated.  Defendants have failed to follow the basic accepted claims handling procedures for disability claims.  For these reasons, and other reasons to be shown at trial, Defendants' decisions regarding the claim are not entitled to any deference, and the trial of the case at bar should be before a jury, or in the alternative, before a judge who will make an independent decision regarding whether the claim of Vineyard is owed.

14.     Defendants committed bad faith in the denial of Vineyard's claim because there is neither a legal nor factual basis to support the Defendants' denial of the claim.  Defendants' instituted claims handling procedures, described above, are in bad faith.

15.     Defendants failed to process Vineyard's claim and all disability claims solely in the interest of participants and beneficiaries.  Defendants failed to provide a full and fair review of Vineyard's claim denial.

16.     Defendants have not complied with the terms of the plan, nor with the law as required during the review process, forcing Vineyard to file this subject suit.

17.     Vineyard files this cause of action under ERISA and other state common law actions to remedy violations of the federal statute, to enforce the terms of the benefits plan and to provide other relief.  The claims include denial of benefits, breach of fiduciary duties, equitable relief against non-fiduciaries to remedy violations of the plan, interference with Vineyard's exercise of his ERISA rights and common law claims.

### COUNT I
### CAUSE OF ACTION UNDER ERISA § 502(a)(1)(B)
### FOR DENIAL OF BENEFITS

18.     Vineyard has properly made a claim for benefits.  He has exhausted the LTD Policy's administrative appeals process.  He is entitled to benefits under the plan's terms.  He has been denied those benefits.

19.     Upon the filing of this Complaint, Vineyard will seek an *ex parte* order of the Court permitting future filings to be made under seal so that Vineyard may immediately provide the Court with the abundant documentation from local Hattiesburg doctors, including Dr. S. Mark Borganelli and Dr. Chad Diamond, proving Vineyard is disabled from his own occupation and is entitled to receive the maximum benefits available under the plan.

### COUNT II
### CAUSE OF ACTION UNDER ERISA § 503
### FOR FAILURE TO COMPLY WITH PROCEDURAL RULES

20.     The specific long-term disability plan contains various rehabilitation programs, work incentives, and other rules and procedures, none of which were properly followed by the Defendants.  Due to their failure to comply with the procedural requirements, the Defendants, particularly the plan administrator, are liable under § 503.

## COUNT III
## CAUSE OF ACTION UNDER ERISA § 502(a)
## FOR BREACH OF FIDUCIARY DUTY

21.   Under § 502(a), the Defendants are liable for breach of fiduciary duties to this Plaintiff by failure to make payments owed under the plan and failure to follow the procedures of the plan, all of which were arbitrary and capricious and without rational or reasonable foundation.

## COUNT IV
## CAUSE OF ACTION UNDER ERISA § 502(a)(3)

22.   Defendants have violated Vineyard's due process rights and violated their responsibilities as a Plan fiduciary by denying Vineyard the right to submit his claim for long term disability benefits under the Plan provisions and ERISA for the following reasons:

a.   Equitable doctrines of estoppel and reformation should apply under ERISA

§ 502(a)(e). (*See Cigna v. Amara*, 563 U.S. 421, 131 S. Ct. 1866 (2011), *holding a participant whose claim is barred under the express terms of a plan might obtain relief under Section 502(a)(3) pursuant to equitable theories as reformation, estoppel and surcharge)* Specifically, a scheme developed by the Plan to deny Plaintiff the right to file his long term disability application and to prematurely close the administrative record, denying the court the right to consider relevant evidence should be estopped on equitable grounds as fundamentally unfair;

b.   ERISA § 502(a)(3) allows a participant or beneficiary to sue under ERISA § 409 for Breach of Fiduciary Duty for " appropriate relief;"

c.   Under ERISA, a person is a plan fiduciary to the extent he or she (1) exercises discretionary authority or control over plan management or control over

7

management or disposition of Plan assets, (2) renders investment advice regarding

Plan assets for a fee or other compensation or has authority to do so, or (3) has

any discretionary authority or responsibility in Plan administration.  29 U.S.C. §

1002(21)(A).  Defendants acted as the claims administrator for the Plan, thereby

charged with acting in a fiduciary capacity for the Plan's participants; Defendants

are a plan fiduciary under the ERISA statutes;

d.  An ERISA fiduciary has a basic duty to act "solely in the interest of plan

participants and fiduciaries, and for the "exclusive purpose" of providing benefits

and defraying reasonable expenses of plan administration.  29 U.S.C. § 1104(a).

Under ERISA § 404, fiduciaries are bound by the duties of loyalty, disclosure,

care, and to act with prudence.  Under the duty of loyalty, a fiduciary must

disclose material information that the fiduciary knows the participant does not

have and will need in order to make an informed decision.  Given that a

fiduciary's duties are the highest known to the law, a trustee is held to something

stricter than the morals of the marketplace; fiduciaries are subject to three

different although overlapping standards of ERISA § 404.  *Donovan v. Bierwirth*,

680 F.2d 263 (2nd Cir. 1982), *cert denied*, 459 U.S. 1069 (1982).  Defendants

failed to act within their fiduciary duties in several respects, including failing to

provide necessary information to Vineyard upon request and thwarting his efforts

to apply for long term disability benefits by denying Vineyard the right to submit

his long term disability application and supplement the record to support his

disability;

8

e.   Defendants violated Vineyard's due process rights under ERISA by denying Vineyard the ability to file for long term disability benefits;

f.   Defendants violated Vineyard's due process rights under ERISA by denying his claim without reviewing an application and/or support documents; and

g.   Judicial declarations are necessary and appropriate at this time to enable the parties to ascertain their rights and duties to each other.

## COUNT V
## ATTORNEY'S FEES

23.   Upon a showing that the action of the Defendants were in violation of the plan, and in violation of the ERISA statutes, and arbitrary and capricious, Vineyard is entitled to recovery of his reasonable attorney's fees, per ERISA § 502(g)(1).

## COUNT VI
## BREACH OF CONTRACT

24.   Vineyard makes a claim for breach of contract under the terms of the plan, due to the failure of the Defendants to pay benefits owed under the plan, said denial of benefits rising to egregious, willful and intentional breach of contract, warranting the imposition of punitive damages and reasonable attorney's fees under common law.

## COUNT VII
## NEGLIGENCE

25.   Defendants have negligently failed to administer the claim and make timely payments.  Uncontradicted evidence of disability has been provided in accordance with the terms of the plan.  Defendants have negligently failed to comply with the terms of the plan, said negligence proximately causing Vineyard's losses.

9

## COUNT VIII
## BAD FAITH

26.     Defendants' failure as described above is a bad faith breach of contract and Defendants' actions and refusal to pay the claims described above rise to the level of an independent tort.  There is no legal or factual basis for Defendants' refusal to pay Vineyard's long term disability claims.  Moreover, Defendants utilized claims handling procedures in bad faith which are guaranteed to deny claims which Defendants know should rightly be paid. Vineyard is entitled to punitive damages and attorneys' fees as appropriate under the Employee Retirement Income Security Act ("ERISA") because such an award would benefit other participants under the plan and would discourage Defendants from repeating their egregious conduct again in the future.

## COUNT IX
## DECLARATORY JUDGMENT RELIEF

27.     Vineyard seeks a declaratory judgment from the Court relating to the following matters.

28.     The evidence to be presented supports a finding that Defendants operated the plan under circumstances creating a conflict of interest, and Vineyard seeks an order for declaratory relief making such a finding.

29.     Based upon the foregoing, Defendants' decisions, if any, regarding whether Vineyard's claim should be paid or denied are owed no deference by the Court, and Vineyard seeks an order for declaratory relief making such a finding.

30.     Defendants failed to perform what could be described as even a minimal review of Vineyard's claims.  As such, Defendants failed in their duties under the plan, and their

decision, if the Court finds that one was in fact made, is not entitled to any deference by this Court.

31.     Vineyard seeks a declaratory judgment that the case law interpreting ERISA and the case law which has been interpreted to make the insurance carrier the judge, jury and a party in interest to a claim violates the Due Process Clause of the Fifth and Fourteenth Amendment to the United States Constitution and specifically that the plan in the case at bar, as administered by the Defendants with the protections of the case law discussed above violates the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, and that the Court should find that as a result of these violations, the Defendants decisions are owed no deference whatsoever.

32.     Vineyard seeks a declaratory judgment that the denial of claim letters from Lincoln fail to adequately explain the basis for the denial of this claims for benefits.

## COUNT X
## DAMAGES

33. For the reasons stated, under federal statute and applicable common law, William Vineyard seeks recovery against the Defendants as follows:

  (a)  All benefits owed under the plan;

  (b)  Reasonable attorney's fees and costs;

  (c)  Punitive damages;

  (d)  Interest, pre-judgment and post-judgment; and

  (e)  Any other relief to which he may be entitled.

WHEREFORE, for the reasons stated, William Vineyard seeks judgment against the Defendants under the applicable ERISA laws and common law and the imposition of a judgment and award of compensation including, but not limited to, all long term disability benefits due and

11

owing under the plan, reasonable attorney's fees, punitive damages, interest, both pre-judgment

and post-judgment, costs, and any other relief to which he may be entitled.

RESPECTFULLY SUBMITTED, this the _lo_ day of December, 2019.

_Clark Hicks_
L. CLARK HICKS, JR. (MSB NO. 8963)
*Attorney for Plaintiff*


HICKS LAW FIRM, PLLC
211 South 29th Avenue, Suite 201 (39401)
Post Office Box 18350
Hattiesburg, MS  39404-8350
Telephone:     601.544.6770
Facsimile:     601.544.6775
Email: clark@hicksattorneys.com

**walmart**

Job Description

# Assistant Manager

This position is responsible for assisting in the operation of a facility. An individual in this position will be expected to perform additional job related responsibilities and duties as assigned and/or as necessary.

## Essential Functions

*An individual must be able to successfully perform the essential functions of this position with or without a reasonable accommodation.*

Provides supervision and development opportunities for hourly Associates in assigned area by hiring, training, mentoring, assigning duties, evaluating performance, providing recognition, and ensuring diversity awareness.

Upholds the Company's Open Door Policy by meeting with Associates and listening to concerns, researching issues, reviewing Company policies and procedures, and providing resolutions for Associates, including proactively seeking out Associate comments and concerns by meeting with Associates in their work areas.

Ensures compliance with Company policies and procedures by holding hourly Associates accountable; analyzing and interpreting reports; implementing and monitoring asset protection and safety controls; maintaining quality assurance standards; overseeing safety and operational reviews; developing and implementing action plans to correct deficiencies; and providing direction and guidance on executing Company programs and strategic initiatives.

Drives the financial performance of assigned area by ensuring that sales and profit goals are achieved and implements plans to correct any deficiencies.

Models, enforces, and provides direction and guidance to hourly Associates on proper Customer service approaches and techniques to ensure Customer needs, complaints, and issues are successfully resolved within Company guidelines and standards.

Participates in community outreach programs, and encourages and supports hourly Associates in serving as good members of the community.

Drives sales in assigned area by ensuring effective merchandise presentation, including accurate and competitive pricing, proper signing, in-stock and inventory levels, budgeting and forecasting sales, and assessing economic trends and community needs.

## Competencies

*An individual must be proficient in each of the competencies listed below to successfully perform the responsibilities of this position.*

Drives Store Experience – Encourages Associates to identify and communicate ideas that will improve the products and services provided to local Customers, such as in the Front-End or on the sales floor, and takes action to implement these ideas. Anticipates external factors (for example, weather, gas prices, local events) and uses this information to plan for Customer traffic and sales volumes. Applies information about competitor prices, products, displays, and change initiatives to upgrade knowledge related to own functional areas, ensure everyday low prices, and make improvements in the Store. Models and teaches Associates how to develop and implement new ways to provide a convenient, safe, and pleasant shopping experience for Customers. Challenges Associates to identify and apply methods for resolving Customer complaints and assists them with addressing difficult or complex issues.

Manages Merchandising Operations - Demonstrates and communicates solid working knowledge of merchandising products, equipment, and procedures. Monitors merchandising timelines and ensures timelines are met for products, fixtures, displays, modulars, layouts, and floorplans. Ensures merchandising operations and Store standards are aligned with Company standards and Customer expectations. Evaluates and responds to Customer and Associate issues related to advising on, maintaining, procuring, displaying, and presenting merchandise. Educates and trains Associates on merchandise planning and improvement processes (for example, seasonal events, item merchandising, feature productivity) and monitors Associate implementation of these practices in order to achieve business goals and objectives.

Customer/Member Centered: Focus on the Customer/Member - Reviews customer/member-focused data and adjusts performance to address findings. Promotes and supports associate efforts to exceed customer/member expectations. Informs associates on how to identify and locate resources to meet the diverse needs of customers/members.

Judgment: Use Appropriate Judgment - Identifies, reviews, and applies policies and procedures to make informed judgments. Identifies and uses facts, information, and expertise to set priorities and make informed decisions. Uses data and evidence to determine the causes of problems and develop solutions to address them.

Execution and Results: Manage Execution and Results - Holds associates accountable for completing work within expectations and time requirements. Plans and manages own and others' time, based on business priorities, and follows up to ensure all work requirements are completed in a timely and accurate manner. Identifies and obtains the resources needed to complete projects. Encourages associates to strive for excellence, efficiency, and quality in work practices.

Planning and Improvement: Plan and Pursue Team-Based Improvement - Coordinates and aligns planning with organizational initiatives and direction. Looks at work plans and makes changes, as needed, to achieve team or work group objectives. Sets realistic timelines for goal accomplishment. Improves work processes and practices to increase performance and results.

EXHIBIT

A

**Walmart**

**Job Description**
# Assistant Manager

Influence and Communicate: Increase Commitment - Promotes ideas and links them to business needs and benefits. Builds trusting, cooperative relationships and alliances with others, inside and outside of the organization. Effectively communicates clear, up-to-date information on business plans and priorities (for example, change initiatives). Shares experience and ideas with associates across the organization.

Ethics and Compliance: Manage Ethics and Compliance - Instructs associates on how to act in accordance with policies and procedures, and supports their efforts in doing so. Ensures associates demonstrate the highest standards of integrity and ethics in work situations. Corrects ethical and compliance issues, enforcing compliance and administering appropriate consequences as needed.

Adaptability: Quickly Adapt - Demonstrates creativity and strength in the face of change, obstacles, and adversity. Adapts to competing demands and shifting priorities. Updates knowledge and skills to handle new complexities, challenges, and responsibilities. Seeks exposure to new ideas and perspectives. Helps associates adjust to and develop the capabilities needed to implement organizational change initiatives.

Talent: Supervise Associates - Provides specific, honest, accurate, and timely feedback on associate performance. Assigns tasks to associates that fit their skill levels and maximize team performance. Uses people processes (for example, selection, development, performance evaluation) to ensure effective associate performance. Recruits and hires the associates needed to meet business requirements. Teaches, guides, and assists in the development of associates.

## Physical Activities
*The following physical activities are necessary to perform one or more essential functions of this position.*

Observes associate, customer, or supplier behavior.

Enters and locates information on computer.

Presents information to small or large groups and individuals.

Communicates effectively in person or by using telecommunications equipment.

Creates documents, reports, etc., using a writing instrument (such as a pencil or pen) or computer.

Grasps, turns, and manipulates objects of varying size and weight, requiring fine motor skills and hand-eye coordination.

Visually verifies information, often in small print.

Reads information, often in small print.

Visually locates merchandise and other objects.

Visually inspects equipment.

Moves, lifts, carries, and places merchandise and supplies weighing up to 25 pounds without assistance.

## Travel
*Traveling is necessary to perform one or more essential functions of this position.*

Travels domestically to and from multiple facilities or work-sites during the workday.

Works or trains at multiple facilities or distant locations. (Travel of extended duration, meaning seven days or more, is not required, except for management training and emergency situations.)

## Work Environment
*Working in the following environment is necessary to perform one or more of the essential functions of this position.*

Works overnight and on varying shifts as required.

## Entry Requirements
### Minimum Qualifications
- 2 or more years of college; OR 1 year retail experience and 1 year supervisory experience; OR 2 years general work experience and 1 year supervisory experience
- Will meet all store requirements to handle and/or sell firearms, such as completion of a firearms-specific Criminal Background Check (CBC), Firearms Authorization Training, and state specific requirements within time frames permitted.

### Preferred Qualifications
- 2 or more years general work experience supervising 5 or more direct reports to include the responsibility of performance management, mentoring, hiring, and firing

**Job Description**

**Assistant Manager**

Walmart

## Signature

I have read and understand the essential functions for this position and certify that:

_____ I have the ability to perform the essential functions of this position either with or without a reasonable accommodation.

_____ I do not have the ability to perform the essential functions of this position either with or without a reasonable accommodation.

_____          _____          _____

Associate/Applicant Printed Name          Associate/Applicant Signature          Date

# LIMITATIONS AND EXCLUSIONS UNDER THE
## ARKANSAS LIFE AND HEALTH INSURANCE
## GUARANTY ASSOCIATION ACT

Residents of this state who purchase life insurance, annuities or health and accident insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association"). The purpose of the Guaranty Association is to assure that policy and contract owners will be protected, within certain limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of policy owners who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by the member insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting insurance companies that are well managed and financially stable.

---

### DISCLAIMER

The Arkansas Life and Health Insurance Guaranty Association ("Guaranty Association") may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions and require continued residency in this state. You should not rely on coverage by the Guaranty Association in purchasing an insurance policy or contract.

Coverage is NOT provided for your policy or contract or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract.

Insurance companies or their agents are required by law to provide you with this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.

The Arkansas Life and Health Insurance Guaranty Association
c/o The Liquidation Division
1023 West Capitol
Little Rock, Arkansas 72201

Arkansas Insurance Department
1200 West Third Street
Little Rock, Arkansas 72201-1904

---

The state law that provides for this safety-net is called the Arkansas Life and Health Insurance Guaranty Association Act ("Act"). Below is a brief summary of the Act's coverages, exclusions and limits. This summary does not cover all provisions of the Act; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Guaranty Association.

## COVERAGE
Generally, individuals will be protected by the Guaranty Association if they live in this state and hold a life, annuity or health insurance contract or policy, or if they are insured under a group insurance contract issued by a member insurer. The beneficiaries, payees or assignees of policy or contract owners are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE
However, persons owning such policies are NOT protected by the Guaranty Association if:
- They are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- The insurer was not authorized to do business in this state;

PLA-9319          Page 1 of 2           Rev 08/13

- Their policy or contract was issued by a nonprofit hospital or medical service organization, an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy or contract owner is subject to future assessments, or by an insurance exchange.

The Guaranty Association also does NOT provide coverage for:
- Any policy or contract or portion thereof which is not guaranteed by the insurer or for which the owner has assumed the risk, such as non-guaranteed amounts held in a separate account under a variable life or variable annuity contract;
- Any policy of reinsurance (unless an assumption certificate was issued);
- Interest rate yields that exceed an average rate;
- Dividends and voting rights and experience rating credits;
- Credits given in connection with the administration of a policy by a group contract holder;
- Employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
- Unallocated annuity contracts (which give rights to group contractholders, not individuals);
- Unallocated annuity contracts issued to/in connection with benefit plans protected under Federal Pension Benefit Corporation ("FPBC")(whether the FPBC is yet liable or not);
- Portions of an unallocated annuity contract not owned by a benefit plan or a government lottery (unless the owner is a resident) or issued to a collective investment trust or similar pooled fund offered by a bank or other financial institution);
- Portions of a policy or contract to the extent assessments required by law for the Guaranty Association are preempted by State or Federal law;
- Obligations that do not arise under the policy or contract, including claims based on marketing materials or side letters, riders or other documents which do not meet filing requirements, or claims for policy misrepresentations, or extra-contractual or penalty claims;
- Contractual agreements establishing the member insurer's obligations to provide book value accounting guarantees for defined contribution benefit plan participants (by reference to a portfolio of assets owned by a nonaffiliate benefit plan or its trustees).

### LIMITS ON AMOUNT OF COVERAGE

The Act also limits the amount the Guaranty Association is obligated to cover: The Guaranty Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Guaranty Association will pay a maximum of $300,000 - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $300,000 in health insurance benefits, $300,000 in present value of annuity benefits, or $300,000 in life insurance death benefits or net cash surrender values - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages. There is a $1,000,000 limit with respect to any contract holder for unallocated annuity benefits, irrespective of the number of contracts held by the contract holder. These are limitations for which the Guaranty Association is obligated before taking into account either its subrogation and assignment rights or the extent to which those benefits could be provided out of the assets of the impaired or insolvent insurer.



### Liberty Life Assurance Company of Boston

# GROUP DISABILITY INCOME POLICY

**Sponsor:**     **Walmart, Inc.**

**Policy Number:**   **GD/GF3-850-290765-01**

**Effective Date:**   **January 1, 2016**

**Governing Jurisdiction** is **Arkansas** and subject to the laws of that State.

**Premiums** are due and payable Bi-weekly.

**Policy Anniversaries** shall occur each January 1st beginning in 2017.

Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty) agrees to pay benefits provided by this policy in accordance with its provisions. This policy provides Short Term Disability and Long Term Disability coverages.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

For purposes of this policy, the Sponsor acts on its own behalf or as the Covered Person's agent. Under no circumstances will the Sponsor be deemed the agent of Liberty.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02116

SECRETARY            PRESIDENT

### NON-PARTICIPATING

**FORM ADOP**

# TABLE OF CONTENTS

SECTION 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . DISABILITY INCOME BENEFITS

SECTION 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

SECTION 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . PREMIUMS

SECTION 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . APPLICATION

# SECTION 1 - SCHEDULE OF BENEFITS

## ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS

### Minimum Hourly Requirement:

Full-time associates are benefit eligible based on Walmart defined classified job category and benefit eligibility.

### Short Term Disability Benefits:

Class 1:     All full-time active eligible New York hourly associates who enrolled in the 60.00% enhanced New York statutory plan

Note:     Temporary, seasonal, and leased Employees, and Employees who are not United States citizens or legal residents working in the United States are not covered under this policy. Please note that "associates" in the Eligibility Requirement class descriptions will be referred to as "Employees" in the Policy and Certificate.

### Long Term Disability Benefits:

Class A1:     All full-time active eligible non-Puerto Rico hourly associates who enrolled in the 50.00% plan, excluding hourly Pharmacists who work in California

Class A2:     All full-time active eligible non-Puerto Rico hourly associates who enrolled in the 60.00% plan, excluding hourly Pharmacists who work in California

Class B1:     All full-time active eligible hourly Pharmacists who work in California and who enrolled when initially eligible or who enrolled in the 50.00% plan

Class B2:     All full-time active eligible hourly Pharmacists who work in California and who enrolled when initially eligible or who enrolled in the 60.00% plan

Class C1:     All full-time active eligible non-Puerto Rico salaried associates, management, salaried Pharmacists, and pilots who enrolled in the 50.00% plan

Class C2:     All full-time active eligible non-Puerto Rico salaried associates, management, salaried Pharmacists, and pilots who enrolled in the 60.00% plan

Class D1:     All full-time active eligible truck drivers who enroll in the 5 year benefit 50.00% plan

Class D2:     All full-time active eligible truck drivers who enroll in the 5 year benefit 60.00% plan

Class D3:     All full-time active eligible truck drivers who enroll in the full duration benefit 50.00% plan

Class D4:     All full-time active eligible truck drivers who enroll in the full duration benefit 60.00% plan

**Note:** Temporary, seasonal, and leased Employees, and Employees who are not United States citizens or legal residents working in the United States are not covered under this policy. Please note that "associates" in the Eligibility Requirement class descriptions will be referred to as "Employees" in the Policy and Certificate.

**Eligibility Waiting Period:**

Applicable to Short Term Disability

1.  If the Covered Person is employed by the Sponsor on the policy effective date -
    12 months of continuous, Active Employment, if enrollment occurs during the Initial Enrollment Period
    An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

2.  If the Covered Person begins employment for the Sponsor after the policy effective date -
    12 months of continuous, Active Employment, if enrollment occurs during the Initial Enrollment Period
    An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

    Note: Prior service credit in an ineligible class will be honored towards fulfilling the Eligibility Waiting Period.

Applicable to Long Term Disability

Applicable to Class A1, A2
1.  If the Covered Person is employed by the Sponsor on the policy effective date -
    12 months of continuous, Active Employment, if enrollment occurs during the Initial Enrollment Period
    An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

2.  If the Covered Person begins employment for the Sponsor after the policy effective date -
    12 months of continuous, Active Employment, if enrollment occurs during the Initial Enrollment Period
    An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

    Note: Prior service credit in an ineligible class will be honored towards fulfilling the Eligibility Waiting Period.

Applicable to Class B1, B2, C1, C2, D1, D2, D3, D4
1.  If the Covered Person is employed by the Sponsor on the policy effective date -
    None, if enrollment occurs during the Initial Enrollment Period
    An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

2.  If the Covered Person begins employment for the Sponsor after the policy effective date -
    None, if enrollment occurs during the Initial Enrollment Period
    An additional 12 months from the date of enrollment, if enrollment occurs after the Initial Enrollment Period

**Employee Contributions Required:**

Short Term Disability Benefits:

**Form ADOP-SCH-1 (continued)**                                        **Schedule of Benefits**

Yes

Long Term Disability Benefits:

Yes

**Name of Associated Companies:**

Jet.com Inc.
221 River St, # 800
Hoboken, NJ  07030  USA

# SECTION 1 - SCHEDULE OF BENEFITS
### (Continued)

**SHORT TERM DISABILITY COVERAGE**

**Elimination Period:**

The period for which a benefit is payable will commence following the Elimination Period shown below:

> 7  calendar days for Injury
> 7  calendar days for Sickness

**Note:**    Benefits will begin on the first day following the completion of the Elimination Period.

**Amount of Insurance:**

> 60.00% of Basic Weekly Earnings not to exceed a Maximum Weekly Benefit of $6,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.  The Minimum Weekly Benefit is $20.00.

**Maximum Benefit Period:**

**Applicable to Injury:**

The period for which a benefit is payable, following completion of the Elimination Period, for any one Disability will end on the earliest of:

> a.    the end of the Disability; or
>
> b.    the end of the 25th week of Disability for which a benefit is payable.

**Applicable to Sickness:**

The period for which a benefit is payable, following completion of the Elimination Period, for any one Disability will end on the earliest of:

> a.    the end of the Disability; or
>
> b.    the end of the 25th week of Disability for which a benefit is payable.

# SECTION 1 - SCHEDULE OF BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE**

**Elimination Period:**

Applicable to Class A1, A2, B1, B2:

> The greater of:
>
> a.    the end of the Covered Person's Short Term Disability Benefits; or
>
> b.    182 days

Applicable to Class C1, C2, D1, D2, D3, D4:

> The greater of:
>
> a.    the end of the Covered Person's Short Term Disability Benefits; or
>
> b.    180 days

**Amount of Insurance:**

Applicable to Class A1, B1, C1, D1, D3:

> 50.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

Applicable to Class A2, B2, C2, D2, D4:

> 60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $15,000.00 less Other Income Benefits and Other Income Earnings as outlined in Section 4.

**Maximum Basic Monthly Earnings on which the Benefit is Based:**

Applicable to Class A1, B1, C1, D1, D3:                    $30,000.00

Applicable to Class A2, B2, C2, D2, D4:                    $25,000.00

**Own Occupation Duration:**

24 Month Own Occupation

# SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Minimum Monthly Benefit:**

The Minimum Monthly Benefit is $100.00 or 10.00% of the Covered Person's Gross Monthly Benefit, whichever is greater.

**Maximum Benefit Period:**

Applicable to Class A1, A2, B1, B2, C1, C2, D3, D4:

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than 62 | To normal retirement age |
| 62 | 48 months |
| 63 | 42 months |
| 64 | 36 months |
| 65 | 30 months |
| 66 | 27 months |
| 67 | 24 months |
| 68 | 21 months |
| 69 and over | 18 months |

\*   SSNRA means the Social Security Normal Retirement Age as figured by the 1983 amendment to the Social Security Act and any subsequent amendments and provides:

| Year of Birth | Normal Retirement Age |
|---|---|
| Before 1938 | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943-1954 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and after | 67 |

Applicable to Class D1, D2:

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than 62 | To normal retirement age or 60 Months, whichever is less |

**Form ADOP-SCH-4**

**Schedule of Benefits**

| | |
|---|---|
| 62 | 48 months |
| 63 | 42 months |
| 64 | 36 months |
| 65 | 30 months |
| 66 | 27 months |
| 67 | 24 months |
| 68 | 21 months |
| 69 and over | 18 months |

**Form ADOP-SCH-4 (continued)**                                    **Schedule of Benefits**

GD/GF3-850-290765-01 R (1) Effective January 1, 2018

## SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this policy. The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means the Employee must be actively at work for the Sponsor:

1. on a full-time basis and paid regular earnings;

2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:

   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

1. a weekend (except where one or both of these days are scheduled work days);
2. holidays (except when the holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave for the Covered Person's own disabling condition and lay-off); and
6. an emergency leave of absence (except emergency medical leave for the Covered Person's own disabling condition).

**"Administrative Office"** means Liberty Life Assurance Company of Boston, 9 Riverside Road, Weston, MA 02493.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each policy anniversary so designated by the Sponsor and Liberty during which an Employee may enroll for coverage under this policy.

## SECTION 2 - DEFINITIONS
(Continued)

**"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

**"Application"** is the document designated in Section 9; it is attached to and is made a part of this policy.

**"Appropriate Available Treatment"** means care or services which are:

1. generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;
2. accessible within the Covered Person's geographical region;
3. provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;
4. in accordance with generally accepted medical standards of practice.

Applicable to Class A1, A2, B1, B2, C1, C2:

**"Basic Monthly Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor for the prior 26 pay periods immediately prior to the last day worked, divided by 12. Such earnings will include bonuses, overtime pay, vacation pay, illness protection and personal pay. However, such earnings will not include commissions, other fringe benefits or any other extra compensation.

Applicable to Class D1, D2, D3, D4:

**"Basic Monthly Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor based on activity rate plus mileage, plus bonuses, for the past 26 pay periods immediately prior to the last day worked, divided by 12. However, such earnings will not include commissions, other fringe benefits or any other extra compensation

**"Basic Weekly Earnings"** means the Covered Person's weekly rate of earnings from the Sponsor for the prior 26 pay periods immediately prior to the last day worked, divided by 52. Such earnings will include bonuses, overtime pay, vacation pay, illness protection and personal pay. However, such earnings will not include commissions, other fringe benefits or any other extra compensation.

**"Consumer Price Index"** means the government publication "The Consumer Price Index for Urban Wage Earners and Clerical Workers" provided monthly by the U.S. Department of Labor, or its successor or in the event of no successor a similar Index of comparable purpose chosen by Liberty.

**"Covered Person"** means an Employee insured under this policy.

**"Disability"** or **"Disabled"**, with respect to Short Term Disability, means the Covered Person, as a result of Injury or Sickness, is either unable to perform the essential duties of his job for his normal work schedule, or a license required for the Covered Person's job duties has been suspended due to a mental or physical illness or injury, or pregnancy. Benefits will be payable during a loss of license only while the Covered Person is disabled and pursuing reinstatement of his license on a timely basis. Timely pursuit of reinstatement means the Covered Person applies for reinstatement when his condition meets the criteria and he provides information and forms requested by the licensing agency on a timely basis until his license is reinstated. The determination of whether the Covered Person is disabled will be made on the basis of objective medical evidence. Objective medical evidence consists of facts and findings, including, but not limited to, X-rays, laboratory reports, tests, consulting physician reports as well as

reports and chart notes from the Covered Person's physician. Loss of license in and of itself is not sufficient for meeting the definition of Disability.

## SECTION 2 - DEFINITIONS
(Continued)

**"Disability"** or **"Disabled"**, with respect to Long Term Disability, means:

1. For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:

      i.      that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

      ii.     thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:

      **"Disability"** or **"Disabled"** means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of his Own Occupation under the applicable Federal Aviation Administration fitness standards.

3. With respect to Covered Persons employed as truck drivers:

      **"Disability"** or **"Disabled"** means :

      i.  that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness:
          a. is unable to perform the Material and Substantial Duties of his Own Occupation, or
          b. loses medical certification in accordance with the Federal Motor Carrier Safety Regulations; and
      ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

**"Disability Benefits under a Retirement Plan"** means money which:

    1.   is payable under a Retirement Plan due to Disability as defined in that plan; and

    2.   does not reduce the amount of money which would have been paid as retirement benefits at the normal retirement age under the plan if the Disability had not occurred. (If the payment does cause such a reduction, it will be deemed a Retirement Benefit as defined in this policy.)

**Form ADOP-DEF-3.1**                                                                     **Definitions**

## SECTION 2 - DEFINITIONS
### (Continued)

**"Domestic Partner"** means an unmarried person of the same or opposite sex with whom the Covered Person shares a committed relationship, are jointly responsible for each other's welfare and financial obligations, at least 18 years of age and mentally competent to consent to a contract, not related by blood to a degree that could prohibit legal marriage in the state where they legally reside, maintain the same residence(s) and are not married to or legally separated from anyone else. A Domestic Partner certification must be completed and filed with the Sponsor before the partner can be designated as an Eligible Survivor.

**"Eligibility Date"** means the date an Employee becomes eligible for insurance under this policy. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligible Survivor"** means the Covered Person's spouse or Domestic Partner, if living, otherwise the Covered Person's children under age 26.

**"Eligibility Waiting Period"** means the continuous length of time an Employee must be in Active Employment in an eligible class to reach his Eligibility Date.

**"Elimination Period"**, with respect to Short Term Disability, means a period of consecutive days of Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

Applicable to Class A1, A2, D1, D2, D3, D4:

**"Elimination Period"**, with respect to Long Term Disability, means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any sixty or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

Applicable to Class B1, B2, C1, C2:

**"Elimination Period"**, with respect to Long Term Disability, means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any one hundred eighty or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by the Covered Person, if required, when enrolling for coverage. This form must be satisfactory to Liberty.

**"Evidence of Insurability"** means a statement of proof of an Employee's medical history upon which acceptance for insurance will be determined by Liberty.

## SECTION 2 - DEFINITIONS
(Continued)

**"Extended Treatment Plan"** means continued care that is consistent with the American Psychiatric Association's standard principles of Treatment, and is in lieu of confinement in a Hospital or Institution. It must be approved in writing by a Physician.

**"Family and Medical Leave"** means a leave of absence for the birth, adoption or foster care of a child, or for the care of the Covered Person's child, spouse or parent or for the Covered Person's own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

**"Family Status Change"** means any one of the following events that may occur:
1. the Employee's marriage or divorce;
2. the Employee's filing or rescinding of a Domestic Partner certification;
3. the birth of a child to the Employee;
4. the adoption of a child by the Employee;
5. the death of the Employee's spouse or Domestic Partner or child;
6. the commencement or termination of employment of the Employee's spouse or Domestic Partner;
7. the change from part-time employment to full-time employment by the Employee or the Employee's spouse or Domestic Partner;
8. the change from full-time employment to part-time employment by the Employee or the Employee's spouse or Domestic Partner;
9. the taking of unpaid leave of absence by the Employee or the Employee's spouse or Domestic Partner.

**"Gross Monthly Benefit"** means the Covered Person's Monthly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

**"Gross Weekly Benefit"** means the Covered Person's Weekly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

**"Hospital"** or **"Institution"** means a facility licensed to provide Treatment for the condition causing the Covered Person's Disability.

## SECTION 2 - DEFINITIONS
(Continued)

**"Indexed Basic Monthly Earnings"** means the Covered Person's Basic Monthly Earnings in effect just prior to the date Disability or Partial Disability began adjusted on the first anniversary of benefit payments and each anniversary thereafter.

**"Initial Enrollment Period"** means one of the following periods during which an Employee may first enroll for coverage under this policy:

1. for an Employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Liberty.

Applicable to Short Term Disability Class 1 Class A1, A2

2. for an Employee who becomes eligible for insurance after the policy effective date, the period between 30 days and 90 days from his date of hire.

Applicable to Class B1, B2, C1, C2, D1, D2, D3, D4

2. for an Employee who becomes eligible for insurance after the policy effective date, the period within 60 days from his date of hire.

**"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this policy:

1. any Disability which begins more than 60 days after an Injury will be considered a Sickness; and

2. any Injury which occurs before the Covered Person is covered under this policy, but which accounts for a medical condition that arises while the Covered Person is covered under this policy will be treated as a Sickness.

**"Last Monthly Benefit"** means the gross Monthly Benefit payable to the Covered Person prior to his death without any reduction for earnings received from employment.

**"Material and Substantial Duties"**, with respect to Short Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Job and cannot be reasonably eliminated or modified.

**"Material and Substantial Duties"**, with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

## SECTION 2 - DEFINITIONS
### (Continued)

**"Mental Illness"** means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness.  If the DSM is discontinued, Liberty will use the replacement chosen or published by the American Psychiatric Association.

**"Monthly Benefit"**, with respect to Long Term Disability, means the monthly amount payable by Liberty to the Disabled or Partially Disabled Covered Person.

**"Own Job"**, with respect to Short Term Disability, means the Covered Person's job that he was performing when his Disability began.

**"Own Occupation"**, with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began.  For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is performed at Wal-Mart Stores, Inc .

## SECTION 2 - DEFINITIONS
### (Continued)

**"Partial Disability" or "Partially Disabled"**, with respect to Long Term Disability, means the Covered Person, as a result of Injury or Sickness, is able to:

1.  perform one or more, but not all, of the Material and Substantial Duties of his Own Occupation or Any Occupation on an Active Employment or a part-time basis; or

2.  perform all of the Material and Substantial Duties of his Own Occupation or Any Occupation on a part-time basis; and

3.  earn between 20.00% and 80.00% of his Basic Monthly Earnings.

.**"Physician"** means a person who:

1.  is licensed to practice medicine and is practicing within the terms of his license; or

2.  is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the Treatment is received and is practicing within the terms of his license.

It does not include a Covered Person, any family member or domestic partner.

**Form ADOP-DEF-8**                                                                                       **Definitions**

## SECTION 2 - DEFINITIONS
### (Continued)

**"Proof"** means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and

3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

Proof must be submitted in a form or format satisfactory to Liberty.

**"Regular Attendance"** means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.

**"Retirement Benefit under a Retirement Plan"** means money which:

1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;

2. does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and

3. is payable upon:

   a. early or normal retirement; or
   b. Disability, if the payment does reduce the amount of money which would have been paid under the plan at the normal retirement age.

## SECTION 2 - DEFINITIONS
(Continued)

**"Retirement Plan"** means a plan which provides retirement benefits to Employees and which is not funded wholly by Employee contributions. The term shall not include a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, 401(K) or a non-qualified plan of deferred compensation.

**"Schedule of Benefits"** means the section of this policy which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

**"Sickness"** means illness, disease, pregnancy or complications of pregnancy.

**"Sponsor"** means the entity to whom this policy is issued.

**"Sponsor's Retirement Plan"** is deemed to include any Retirement Plan:

1.  which is part of any Federal, State, Municipal or Association retirement system; or

2.  for which the Employee is eligible as a result of employment with the Sponsor.

**"Substance Abuse"** means alcohol and/or drug abuse, addiction or dependency.

**"Treatment"** means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.

**"Weekly Benefit"**, with respect to Short Term Disability, means the weekly amount payable by Liberty to the Disabled Covered Person.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Eligibility Requirements for Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1. this policy's effective date; or

2. the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of Benefits.

**Initial Enrollment Period**

During the Initial Enrollment Period an Employee can enroll in any one coverage or coverage option shown in the Schedule of Benefits. If he does not choose any coverage or coverage option, he will not be enrolled for any coverage. If an Employee's Initial Enrollment Period takes place during or after the Annual Enrollment Period, but before the policy anniversary his coverage option will apply for (a) the rest of the policy year in which he first becomes eligible; and (b) the next policy year.

Applicable to Short Term Disability Class 1:

Applicable to Long Term Disability Class A1, A2, B1, B2, C1, C2:

**Annual Enrollment Period**

During each Annual Enrollment Period, a Covered Person may keep his coverage at the same level or make one of the following changes in coverage for the next policy year:

1. a decrease in coverage;

2. an increase in coverage without Evidence of Insurability.

Applicable to Long Term Disability Class D1, D2, D3, D4:

**Annual Enrollment Period**

During each Annual Enrollment Period, a Covered Person may keep his coverage at the same level or make one of the following changes in coverage for the next policy year:

1. a decrease in coverage;

2. an increase in coverage subject to Evidence of Insurability.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

Applicable To Short Term Disability Class 1:

Applicable To Long Term Disability Class A1, A2, B1, B2, C1, C2:

**Family Status Change**

When an Employee experiences a Family Status Change, he may keep his coverage at the same level or make one of the following changes in coverage:

1.   a decrease in coverage;

2.   an increase in coverage without Evidence of Insurability.

Applicable To Long Term Disability Class D1, D2, D3, D4:

**Family Status Change**

When an Employee experiences a Family Status Change, he may keep his coverage at the same level or make one of the following changes in coverage:

1.   a decrease in coverage;

2.   an increase in coverage subject to Evidence of Insurability.

The Covered Person must apply for the change in coverage within 60 days of the date of the Family Status Change. Such changes in coverage must be due to or consistent with the reason that the change in coverage was permitted. A change in coverage is consistent with a Family Status Change only if it is necessary or appropriate as the result of the Family Status Change.

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

1.   For Coverage Applied for During Initial Enrollment Periods:

   a.   an Employee will be insured on the date the Employee makes application for insurance if he enrolls on or before the 60th day after his Eligibility Date; or

Applicable to Short Term Disability Class 1:

Applicable to Long Term Disability Class A1, A2, B1, B2, C1, C2:

   b.   an Employee who does not enroll on or before the 60th day after his Eligibility Date, or terminated his insurance while continuing to be eligible must submit an application to Liberty for approval, at the Employee's expense. The Employee will be insured on the date Liberty gives its approval.

Applicable to Long Term Disability Class D1, D2, D3, D4:

**Form ADOP-ELG-5**

**With Family Status Change**
**Eligibility and Effective Dates**

b.    an Employee who does not enroll on or before the 60th day after his Eligibility Date, or terminated his insurance while continuing to be eligible must submit an application and Evidence of Insurability to Liberty for approval, at the Employee's expense.  The Employee will be insured on the date Liberty gives its approval.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Effective Date of Insurance** (Continued)

Applicable to Short Term Disability Class 1:

Applicable to Long Term Disability Class A1, A2, B1, B2, C1, C2:

2.   For Contributory Coverage Applied for During Annual Enrollment Periods

An Employee will be insured for the selected contributory coverage on the first day of the next policy anniversary.

3.   For Coverage Applied for Due to a Family Status Change

An Employee will be insured for the selected coverage on the later of the following dates, provided he applies or enrolls for the change in coverage before the end of the 60th day following the Family Status Change:

a.   the date of the Family Status Change;
b.   the date the Employee applies or enrolls for the change in coverage.

Applicable to Long Term Disability Class D1, D2, D3, D4:

   2.   For Contributory Coverage Applied for During Annual Enrollment Periods

         An Employee will be insured for the selected contributory coverage on the later of these dates:

         a.   the first day of the next policy anniversary; or
         b.   the date Liberty gives its approval, if the Employee:

               i.   increases his coverage option; or
               ii.  terminated his insurance while continuing to be eligible.

         In the case of i. and ii. above, the Employee must submit an application and Evidence of Insurability to Liberty for approval.  This will be at the Employee's expense.

   3.   For Coverage Applied for Due to a Family Status Change

         An Employee will be insured for the selected coverage on the later of the following dates, provided he applies or enrolls for the change in coverage before the end of the 60th day following the Family Status Change:

         a.   the date of the Family Status Change;
         b.   the date the Employee applies or enrolls for the change in coverage; or
         c.   the date Liberty gives its approval, if the Employee:

               i.   increases his coverage option; or
               ii   terminated his insurance while continuing to be eligible.

         In the case of i. and ii. above, the Employee must submit an application and Evidence of Insurability to Liberty for approval.  This will be at the Employee's expense.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness.  The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Family and Medical Leave**

An Employee's coverage may be continued under this policy for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1. the authorized leave is in writing;

2. the required premium is paid;

3. the Covered Person's benefit level, or the amount of earnings upon which the Covered Person's benefit may be based, will be that in effect on the date before said leave begins; and

4. continuation of coverage will cease immediately if any one of the following events should occur:

   a. the Covered Person returns to work;
   b. this group insurance policy terminates;
   c. the Covered Person is no longer in an eligible class;
   d. nonpayment of premium when due by the Sponsor or the Covered Person;
   e. the Covered Person's employment terminates.

**Rehire Terms**

If a former Employee is re-hired by the Sponsor within 13 weeks of his termination date, all past periods of Active Employment with the Sponsor will be used in determining the re-hired Employee's Eligibility Date. If a former Employee is re-hired by the Sponsor more than 13 weeks after his termination date, he is considered to be a new Employee when determining his Eligibility Date.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Leave of Absence**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is given a leave of absence. Coverage will be reinstated if you return to Active Employment status within one year.

The Covered Person's coverage will not continue beyond a period of 90 days. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

**Lay-off**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is temporarily laid off. Coverage will be reinstated if you return to Active Employment status within one year.

The Covered Person's coverage will not continue beyond a period of 90 days. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

**Associated Companies**

Companies, corporations, firms or individuals that are subsidiary to, or affiliated with, the Sponsor will be called Associated Companies. The Associated Companies, if any, are listed in the Schedule of Benefits. Employees of Associated Companies will be considered Employees of the Sponsor for purposes of this policy.

As they relate to this policy, all actions, agreements and notices between Liberty and the Sponsor will be binding on the Associated Companies.

If any Associated Companies cease to be Associated Companies for any reason, its Employees will be deemed to have transferred to a class of Employees not eligible for coverage under this policy.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

**Transfer Provision**

In order to prevent loss of coverage for an individual because of transfer of insurance carriers, this policy will provide coverage for certain individuals as follows:

**Failure to be In Active Employment Due to Injury or Sickness:**

Subject to premium payments, this policy will cover individuals who:

1.  at the time of transfer are covered under the prior carrier's policy; and

2.  are not in Active Employment due to Injury or Sickness on the effective date of this policy.

Benefits will be determined based on the lesser of:

1.  the amount of the Disability benefit that would have been payable under the prior policy and subject to any applicable policy limitations; or

2.  the amount of Disability benefits payable under this policy.  If benefits are payable under the prior policy for the Disability, no benefits are payable under this policy.

**Disability Due to a Pre-Existing Condition**

Applicable to Long Term Disability Class A1, A2, B1, B2, C1, C2, D1, D2, D3, D4:

If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:

1.  Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;

2.  if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy; and the prior carrier's policy, the benefit will be determined according to this policy.  However, the Maximum Monthly Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

## SECTION 4 - DISABILITY INCOME BENEFITS

**SHORT TERM DISABILITY COVERAGE**

**Disability Benefit**

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Weekly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1. Disability;

2. Regular Attendance of a Physician; and

3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

The Weekly Benefit will not:

1. exceed the Covered Person's Amount of Insurance; or

2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

**Amount of Disability Weekly Benefit**

To figure the amount of Weekly Benefit:

1. Take the lesser of:

    a. the Covered Person's Basic Weekly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or

    b. the Maximum Weekly Benefit shown in the Schedule of Benefits; and then

2. Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), from this amount.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**SHORT TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings**

**Other Income Benefits** means:

1.   The amount for which the Covered Person is eligible under:

   a.   any work loss provision in mandatory "No-Fault" auto insurance; or

   b.   any governmental program or coverage required or provided by statute (including any amount attributable to the Covered Person's family).

2.   any amount the Covered Person receives from any unemployment benefits.

**Other Income Earnings** means:

1.   the amount of earnings the Covered Person earns or receives from any form of employment; and

2.   any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s).

Other Income Benefits, except retirement benefits, must be payable as a result of the same Disability for which Liberty pays a benefit.  The sum of Other Income Benefits and Other Income Earnings will be deducted in accordance with the provisions of this policy.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**SHORT TERM DISABILITY COVERAGE** (Continued)

**Estimation of Benefits**

Liberty will reduce the Covered Person's Disability benefits by the amount of Other Income Benefits that we estimate are payable to the Covered Person.

The Covered Person's Disability benefit will not be reduced by the estimated amount of Other Income Benefits if the Covered Person:

1.   provides satisfactory proof of application for Other Income Benefits;

2.   signs a reimbursement agreement under which, in part, the Covered Person agrees to repay Liberty for any overpayment resulting from the award or receipt of Other Income Benefits;

3.   if applicable, provides satisfactory proof that all appeals for Other Income Benefits have been made on a timely basis to the highest administrative level unless Liberty determines that further appeals are not likely to succeed; and

4.   if applicable, submits satisfactory proof that Other Income Benefits have been denied at the highest administrative level unless Liberty determines that further appeals are not likely to succeed.

In the event that Liberty overestimates the amount payable to the Covered Person from any plans referred to in the Other Income Benefits and Other Income Earnings provision of this policy, Liberty will reimburse the Covered Person for such amount upon receipt of written proof of the amount of Other Income Benefits awarded (whether by compromise, settlement, award or judgement) or denied (after appeal through the highest administrative level).

# SECTION 4 – DISABILITY INCOME BENEFITS
(Continued)

**SHORT TERM DISABILITY COVERAGE** (Continued)

### Lump Sum Payments

Other Income Benefits from a compromise, settlement, award or judgement which are paid to the Covered Person in a lump sum and meant to compensate the Covered Person for any one or more of the following:

1. loss of past or future wages;
2. impaired earnings capacity;
3. lessened ability to compete in the open labor market;
4. any degree of permanent impairment; and
5. any degree of loss of bodily function or capacity;

will be prorated on a weekly basis as follows:

1. over the period of time such benefits would have been paid if not in a lump sum; or

2. if such period of time cannot be determined, over a period of 260 weeks.

### Cost of Living Freeze

After the first deduction for each of the Other Income Benefits, the Weekly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits provision of this policy.

### Prorated Benefits

For any period for which a Short Term Disability benefit is payable that does not extend through a full week, the benefit will be paid on a prorated basis. The rate will be 1/7th for each day for such period of Disability.

### Discontinuation of the Short Term Disability Benefit

The Weekly Benefit will cease on the earliest of:

1. the date the Covered Person fails to provide Proof of continued Disability and Regular Attendance of a Physician;

2. the date the Covered Person fails to cooperate in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

## SECTION 4 – DISABILITY INCOME BENEFITS
(Continued)

**SHORT TERM DISABILITY COVERAGE** (Continued)

**Discontinuation of the Short Term Disability Benefit** (Continued)

The Weekly Benefit will cease on the earliest of: (Continued)

3.   the date the Covered Person refuses to be examined or evaluated at reasonable intervals;

4.   the date the Covered Person refuses to receive Appropriate Available Treatment;

5.   the date the Covered Person refuses a job with the Sponsor where workplace modifications or accommodations were made to allow the Covered Person to perform the Material and Substantial Duties of the job;

6.   the date the Covered Person is no longer Disabled according to this policy;

7.   the end of the Maximum Benefit Period; or

8.   the date the Covered Person dies.

# SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**SHORT TERM DISABILITY COVERAGE** (Continued)

**Successive Periods of Disability**

With respect to this policy, **"Successive Periods of Disability"** means a Disability which is related or due to the same cause(s) as a prior Disability for which a Weekly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this policy, a Covered Person:

1. returns to his Own Job on an Active Employment basis for less than thirty continuous days; and

2. performs all the Material and Substantial duties of his Own Job.

To qualify for the Successive Periods of Disability benefit, the Covered Person must experience more than a 20% loss of Basic Weekly Earnings.

Benefit payments will be subject to the terms of this policy for the prior Disability.

If a Covered Person returns to his Own Job on an Active Employment basis for thirty continuous days or more, the Successive Period of Disability will be treated as a new period of Disability. The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group short term disability coverage, this Successive Periods of Disability provision will cease to apply to that Covered Person.

## SECTION 4 - DISABILITY INCOME BENEFITS

**LONG TERM DISABILITY COVERAGE**

**Disability Benefit**

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1.  Disability;

2.  Regular Attendance of a Physician; and

3.  Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, for persons other than pilots and co-pilots, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

The Monthly Benefit will not:

1.  exceed the Covered Person's Amount of Insurance; or

2.  be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

**Amount of Disability Monthly Benefit**

To figure the amount of Monthly Benefit:

1.  Take the lesser of:

    a.  the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or

    b.  the Maximum Monthly Benefit shown in the Schedule of Benefits; and then

2.  Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability**

When Liberty receives Proof that a Covered Person is Partially Disabled and has experienced a loss of earnings due to Injury or Sickness and requires the Regular Attendance of a Physician, he may be eligible to receive a Monthly Benefit, subject to any other provisions of this policy.  To be eligible to receive Partial Disability benefits, the Covered Person may be employed in his Own Occupation or another occupation, must satisfy the Elimination Period and must be earning between 20.00% and 80.00% of his Basic Monthly Earnings.

A Monthly Benefit will be paid for the period of Partial Disability if the Covered Person gives to Liberty Proof of continued:

1. Partial Disability;

2. Regular Attendance of a Physician; and

3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Partially Disabled, for persons other than pilots and co-pilots, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, pay cuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Partial Disability, the Injury must occur and Partial Disability must begin while the Employee is insured for this coverage.

**Proportionate Loss Monthly Calculation with Work Incentive Benefit**

For the first 3 Months, the work incentive benefit will be an amount equal to the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits, without any reductions from earnings.  The work incentive benefit will only be reduced, if the Monthly Benefit payable plus any earnings exceed 100% of the Covered Person's Basic Monthly Earnings.  If the combined total is more, the Monthly Benefit will be reduced by the excess amount so that the Monthly Benefit plus the Covered Person's earnings does not exceed 100% of his Basic Monthly Earnings.

Thereafter, to figure the Amount of Monthly Benefit the formula (A divided by B) x C will be used.

A = The Covered Person's Basic Monthly Earnings minus the Covered Person's earnings received while he is Partially Disabled. This figure represents the amount of lost earnings.

B = The Covered Person's Basic Monthly Earnings.

C = The Monthly Benefit as figured in the Disability provision of this policy plus the Covered Person's earnings received while he is Partially Disabled, (but, not including adjustments under the Cost of Living Adjustment Benefit, if included).

## SECTION 4 – DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability** (Continued)

**Proportionate Loss Monthly Calculation with Work Incentive Benefit** (Continued)

On the first anniversary of benefit payments and each anniversary thereafter, for the purpose of calculating the benefit, the term "Basic Monthly Earnings" is:

1. replaced by "Indexed Basic Monthly Earnings"; and

2. increased annually by 7.00%, or the current annual percentage increase in the Consumer Price Index, whichever is less.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits.  However, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 – DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Mental Illness and/or Substance Abuse Limitation**

The benefit for Disability due to Mental Illness and/or Substance Abuse will not exceed a period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.

If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the period of 24 months, the Monthly Benefit will be paid during the confinement.

If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a period of 36 months.

In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.

# SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Survivor Benefit**

Liberty will pay a lump sum benefit to the Eligible Survivor when Proof is received that a Covered Person died:

1.  after Disability had continued for 180 or more consecutive days;  and

2.  while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to the greater of $5,000.00 or three times the Covered Person's Last Monthly Benefit.

If the survivor benefit is payable to the Covered Person's children, payment will be made in equal shares to the children, including step children and legally adopted children.  However, if any of said children are minors or incapacitated, payment will be made on their behalf to the court appointed guardian of the children's property.   This payment will be valid and effective against all claims by others representing or claiming to represent the children.

If there is no Eligible Survivor, the benefit is payable to the estate.

If an overpayment is due to Liberty at the time of a Covered Person's death, the benefit payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings**

**Other Income Benefits** means:

1. The amount for which the Covered Person is eligible under:

   a. Workers' or Workmen's Compensation Laws;
   b. Occupational Disease Law;
   c. Title 46, United States Code Section 688 (The Jones Act);
   d. any work loss provision in mandatory "No-Fault" auto insurance;
   e. Railroad Retirement Act;
   f. any governmental compulsory benefit act or law; or
   g. any other act or law of like intent.

2. The amount of any Disability benefits which the Covered Person is eligible to receive under:
   a. any other group insurance plan of the Sponsor;
   b. any governmental retirement system as a result of his employment with the Sponsor ; or
   c. any individual insurance plan where the premium is wholly or partially paid by the Sponsor. However, Liberty will only reduce the Monthly Benefit if the Covered Person's Monthly Benefit under this policy, plus any benefits that the Covered Person is eligible to receive under such individual insurance plan exceed 100% of the Covered Person's Basic Monthly Earnings. If this sum exceeds 100% of Basic Monthly Earnings, the Covered Person's Monthly Benefit under this policy will be reduced by such excess amount.

3. The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows:

   a. the amount of any Disability Benefits under a Retirement Plan, or Retirement Benefits under a Retirement Plan the Covered Person voluntarily elects to receive as retirement payment under the Sponsor's Retirement Plan; and
   b. the amount the Covered Person receives as retirement payments when he reaches the later of age 62, or normal retirement age as defined in the Sponsor's plan.

4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, which:

   a. the Covered Person receives or is eligible to receive; and
   b. his spouse, child or children receives or are eligible to receive because of his Disability; or
   c. his spouse, child or children receives or are eligible to receive because of his eligibility for retirement benefits.

5. Any amount the Covered Person receives from any unemployment benefits.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings** (Continued)

**Other Income Earnings** means:

1. the amount of earnings the Covered Person earns or receives from any form of employment , and

2. any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s).

Other Income Benefits, except retirement benefits, must be payable as a result of the same Disability for which Liberty pays a benefit. The sum of Other Income Benefits and Other Income Earnings will be deducted in accordance with the provisions of this policy.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Estimation of Benefits**

Liberty will reduce the Covered Person's Disability or Partial Disability benefits by the amount of Other Income Benefits that we estimate are payable to the Covered Person and his dependents.

The Covered Person's Disability benefit will not be reduced by the estimated amount of Other Income Benefits if the Covered Person:

1. provides satisfactory proof of application for Other Income Benefits;

2. signs a reimbursement agreement under which, in part, the Covered Person agrees to repay Liberty for any overpayment resulting from the award or receipt of Other Income Benefits;

3. if applicable, provides satisfactory proof that all appeals for Other Income Benefits have been made on a timely basis to the highest administrative level unless Liberty determines that further appeals are not likely to succeed; and

4. if applicable, submits satisfactory proof that Other Income Benefits have been denied at the highest administrative level unless Liberty determines that further appeals are not likely to succeed.

Liberty will not estimate or reduce for any benefits under the Sponsor's pension or retirement benefit plan according to applicable law, until the Covered Person actually receives them.

In the event that Liberty overestimates the amount payable to the Covered Person from any plans referred to in the Other Income Benefits and Other Income Earnings provision of this policy, Liberty will reimburse the Covered Person for such amount upon receipt of written proof of the amount of Other Income Benefits awarded (whether by compromise, settlement, award or judgement) or denied (after appeal through the highest administrative level).

**Social Security Assistance**

Liberty may help a Covered Person in applying for Social Security Disability Income Benefits. In order to be eligible for assistance the Covered Person must be receiving a Monthly Benefit from Liberty. Such assistance will be provided only if Liberty determines that assistance would be beneficial.

# SECTION 4 – DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

### Lump Sum Payments

Other Income Benefits from a compromise, settlement, award or judgement which are paid to the Covered Person in a lump sum and are meant to compensate the Covered Person for any one or more of the following:

1. loss of past or future wages;
2. impaired earnings capacity;
3. lessened ability to compete in the open labor market;
4. any degree of permanent impairment; and
5. any degree of loss of bodily function or capacity;

will be prorated on a monthly basis as follows:

1. over the period of time such benefits would have been paid if not in a lump sum; or

2. if such period of time cannot be determined, the lesser of:

    a. the remainder of the Maximum Benefit Period; or
    b. 5 years.

### Cost of Living Freeze

After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits and Other Income Earnings provision of this policy.  This provision does not apply to increases received from any form of employment.

### Prorated Benefits

For any period for which a Long Term Disability benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis.  The rate will be 1/30th for each day for such period of Disability.

### Discontinuation of the Long Term Disability Benefit

The Monthly Benefit will cease on the earliest of:

1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician;

2. the date the Covered Person fails to cooperate in the administration of the claim.  Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

## SECTION 4 – DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Discontinuation of the Long Term Disability Benefit** (Continued)

The Monthly Benefit will cease on the earliest of: (Continued)

3.     the date the Covered Person refuses to be examined or evaluated at reasonable intervals;

4.     the date the Covered Person refuses to receive Appropriate Available Treatment;

5.     the date the Covered Person refuses a job with the Sponsor where workplace modifications or accommodations were made to allow the Covered Person to perform the Material and Substantial Duties of the job;

6.     the date the Covered Person is able to work in his Own Occupation on a part-time basis, but chooses not to;

7.     the date the Covered Person's current Partial Disability earnings exceed 80.00% of his Indexed Basic Monthly Earnings;

      Because the Covered Person's current earnings may fluctuate, Liberty will average earnings over three consecutive months rather than immediately terminating his benefit once 80.00% of Indexed Basic Monthly Earnings has been exceeded.

8.     the date the Covered Person is no longer Disabled according to this policy;

9.     the end of the Maximum Benefit Period; or

10.    the date the Covered Person dies.

      **Long Term Disability**

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Successive Periods of Disability**

With respect to this policy, **"Successive Periods of Disability"** means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this policy, a Covered Person:

1.  returns to his Own Occupation on an Active Employment basis for less than six continuous months; and

2.  performs all the Material and Substantial Duties of his Own Occupation.

To qualify for a Successive Periods of Disability benefit, the Covered Person must experience more than a 20% loss of Basic Monthly Earnings.

Benefit payments will be subject to the terms of this policy for the prior Disability.

If a Covered Person returns to his Own Occupation on an Active Employment basis for six continuous months or more, the Successive Period of Disability will be treated as a new period of Disability.  The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group long term disability coverage, this Successive Period of Disability provision will cease to apply to that Covered Person.

## SECTION 5 - EXCLUSIONS

**GENERAL EXCLUSIONS**

This policy will not cover any Disability due to:

1.   war, declared or undeclared, or any act of war;

2.   active Participation in a Riot;

3.   the committing of or attempting to commit a felony or misdemeanor; or

4.   cosmetic surgery unless such surgery is in connection with an Injury or Sickness sustained while the individual is a Covered Person.

No benefit will be payable during any period of incarceration.

With respect to this provision, **Participation** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the Covered Person, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, **Riot** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

# SECTION 5 - EXCLUSIONS

**SHORT TERM DISABILITY COVERAGE**

**Disability Benefit Exclusions**

A Weekly Benefit will not be payable if a Covered Person becomes Disabled due to:

1. Injury that arises out of or in the course of employment; or

2. Sickness when a benefit is payable under a Workers' Compensation Law, or any other act or law of like intent.

These exceptions will not apply to partners or proprietors who elect not to be covered under such laws.

## SECTION 5 - EXCLUSIONS
### (Continued)

**LONG TERM DISABILITY COVERAGE**

**Pre-Existing Condition Exclusion**

This policy will not cover any Disability or Partial Disability:

1. which is caused or contributed to by, or results from, a Pre-Existing Condition; and

2. which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

**"Pre-Existing Condition"** means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.

## SECTION 6 - TERMINATION PROVISIONS

**Termination of a Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1.   the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;

2.   the date the Covered Person is no longer in an eligible class;

3.   the date the Covered Person's class is no longer included for insurance;

4.   the last day for which any required Employee contribution has been made;

5.   the date employment terminates.   Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

   a.   the Elimination Period; and
   b.   any period during which premium is being waived.

6.   the date the Covered Person ceases active work due to a labor dispute, including any strike, work slowdown, or lockout.

Liberty reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

# SECTION 6 - TERMINATION PROVISIONS
### (Continued)

**Policy Termination**

1. Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2. If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Liberty at least 31 days prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Liberty for all premiums due and unpaid for the full period for which this policy is in force.

3. Liberty may terminate this policy on any premium due date by giving written notice to the Sponsor at least 31 days in advance if:

   a. the number of Employees insured is fewer than 10; or

   b. less than 25.00% of all the Employees eligible for any contributory insurance are insured for it; or

   c. the Sponsor fails:

      i. to furnish promptly any information which Liberty may reasonably require; or
      ii. to perform any other obligations pertaining to this policy.

4. Liberty may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Liberty will provide written notice of such termination to the Sponsor at least 31 days before the termination is effective.

5. Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

## SECTION 7 - GENERAL PROVISIONS

**Assignment**

No assignment of any present or future right or benefit under this policy will be allowed.

**Complete Contract - Policy Changes**

1.   This policy is the entire contract. It consists of:

   a.   all of the pages; and
   b.   the attached signed Application of the Sponsor; and
   c.   if contributory each Employee's signed application for insurance.

2.   This policy may be changed in whole or in part.  Only an officer of Liberty can approve a change. The approval must be in writing and endorsed on or attached to this policy.

3.   No other person, including an agent, may change this policy or waive any part of it.

**Conformity with State Statutes**

Any provision of this policy which, on its effective date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

**Employee's Certificate**

Liberty will provide a Certificate to the Sponsor for delivery to Covered Persons.  It will state:

   1.   the name of the insurance company and the policy number;
   2.   a description of the insurance provided;
   3.   the method used to determine the amount of benefits;
   4.   to whom benefits are payable;
   5.   limitations or reductions that may apply;
   6.   the circumstances under which insurance terminates; and
   7.   the rights of the Covered Person upon termination of this policy.

If the terms of a Certificate and this policy differ, this policy will govern.

**Examination**

Liberty, at its own expense, may have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Liberty.  This right may be used as often as reasonably required.

# SECTION 7 - GENERAL PROVISIONS
## (Continued)

**Furnishing of Information - Access to Records**

1.  The Sponsor will furnish at regular intervals to Liberty:

    a.  information relative to Employees:

        i.    who qualify to become insured;
        ii.   whose amounts of insurance change; and/or
        iii.  whose insurance terminates.

    b.  any other information about this policy that may be reasonably required.

    The Sponsor's records which, in the opinion of Liberty, have a bearing on the insurance will be opened for inspection at any reasonable time.

2.  Clerical error or omission will not:

    a.  deprive an Employee of insurance;
    b.  affect an Employee's Amount of Insurance; or
    c.  effect or continue an Employee's insurance which otherwise would not be in force.

**Interpretation of the Policy**

Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.  Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

**Incontestability**

The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue.  The validity of this policy shall not be contested on the basis of a statement made relating to insurability by any person covered under this policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

**Legal Proceedings**

A claimant or the claimant's authorized representative cannot start any legal action:

1.  until 60 days after Proof of claim has been given; or

2.  more than three years after the time Proof of claim is required.

## SECTION 7 – GENERAL PROVISIONS
(Continued)

**Misstatement of Age**

If a Covered Person's age has been misstated, an equitable adjustment will be made in the premium.  If the amount of the benefit is dependent upon an Employee's age, the amount of the benefit will be the amount an Employee would have been entitled to if his correct age were known.

A refund of premium will not be made for a period more than 12 months before the date Liberty is advised of the error.

**Notice and Proof of Claim**

1. **Notice**

   a. Notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based.  If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so.  Such notice of claim must be received in a form or format satisfactory to Liberty.

   b. When written notice of claim is applicable and has been received by Liberty, the Covered Person will be sent claim forms.  If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Liberty written Proof of claim without waiting for the forms.

2. **Proof**

   a. Satisfactory Proof of loss must be given to Liberty no later than 30 days after the end of the Elimination Period.

   b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time.  Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.

   c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Liberty within 30 days of the request for such Proof.

Liberty reserves the right to determine if the Covered Person's Proof of loss is satisfactory.

**Payment of Claims**

The benefit is payable to the Covered Person.  But, if a benefit is payable to a Covered Person's estate, a Covered Person who is a minor, or who is not competent, Liberty has the right to pay up to $2,000 to any of the Covered Person's relatives or any other person whom Liberty considers entitled thereto by reason of having incurred expense for the maintenance, medical attendance or burial of the Covered Person.  If Liberty in good faith pays the benefit in such a manner, any such payment shall fulfill Liberty's responsibility for the amount paid.

## SECTION 7 – GENERAL PROVISIONS
### (Continued)

**Right of Recovery**

Liberty has the right to recover any overpayment of benefits caused by, but not limited to, the following:

1. fraud;
2. any error made by Liberty in processing a claim; or
3. the Covered Person's receipt of any Other Income Benefits.

Liberty may recover an overpayment by, but not limited to, the following:

1. requesting a lump sum payment of the overpaid amount;
2. reducing any benefits payable under this policy;
3. taking any appropriate collection activity available including any legal action needed; and
4. placing a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any Other Income Benefits, whether on a periodic or lump sum basis.

It is required that full reimbursement be made to Liberty.

**Statements**

In the absence of fraud, all statements made in any application are considered representations and not warranties (absolute guarantees).  No representation by:

1. the Sponsor in applying for this policy will make it void unless the representation is contained in the signed Application; or

2. any Employee in enrolling for insurance under this policy will be used to reduce or deny a claim unless a copy of the Enrollment Form, signed by the Employee if required, is or has been given to the Employee.

**Subrogation and Reimbursement**

When a Covered Person's Injury or Sickness appears to be someone else's fault, benefits otherwise payable under this policy for loss of time as a result of that Injury or Sickness will not be paid unless the Covered Person or his legal representative agree(s):

1. to repay Liberty for such benefits to the extent they are for losses for which compensation is paid to the Covered Person by or on behalf of the person at fault;

2. to allow Liberty a lien on such compensation and to hold such compensation in trust for Liberty; and

3. to execute and give to Liberty any instruments needed to secure the rights under 1. and 2. above.

Further, when Liberty has paid benefits to or on behalf of the injured Covered Person, Liberty will be subrogated to all rights of recovery that the Covered Person has against the person at fault.  These subrogation rights will extend only to recovery of the amount Liberty has paid.  The Covered Person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to Liberty.

# SECTION 7 – GENERAL PROVISIONS
## (Continued)

**Workers' Compensation**

This policy and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

# SECTION 8 - PREMIUMS

**Premium Rates**

Liberty has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

**Applicable to Long Term Disability**

A change in the initial premium rate(s) will not take effect within the first 36 months except that Liberty may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

**Applicable to Short Term Disability**

A change in the initial premium rate(s) will not take effect within the first 24 months except that Liberty may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

1.  a change occurs in the policy design;

2.  a division, subsidiary or Associated Company is added to or deleted from this policy;

3.  when the number of Covered Persons changes by 10.00% or more from the number insured on this policy's effective date; or

4.  a change in existing law which affects this policy.

No premium may be changed unless Liberty notifies the Sponsor at least 31 days in advance. Premium changes may take effect on an earlier date when both Liberty and the Sponsor agree.

**Payment of Premiums**

1.  All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Liberty's Administrative Office, or to Liberty's agent. The due dates are specified on the first page of this policy.

2.  All payments made to or by Liberty shall be in United States dollars.

3.  If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

4.  The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of a Covered Person's Insurance" provision of this policy.

5.  If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.

6.  Except for fraud and premium adjustments, refunds of premiums or charges will be made only for:

    1.  the current policy year; and

    2.  the immediately preceding policy year.

## SECTION 8 - PREMIUMS
### (Continued)

**Grace Period**

This is the 45 days following a premium due date, other than the first, during which premium payment may be made.  During the grace period this policy shall continue in force, unless the Sponsor has given Liberty written notice 31 days in advance of discontinuance of this policy.

**Waiver of Premium**

With respect to Long Term Disability benefits, premium payments for a Covered Person are waived during any period for which benefits are payable.  If coverage is to be continued, premium payments must be resumed following a period during which they were waived.

# AMENDMENT NO. 1

It is agreed the following changes are hereby made to this policy:  GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---------|-----------|-----------|
| Revised the Elimination Period in Section 1 | Form ADOP-SCH-3 R (1) | Form ADOP-SCH-3 |

The effective date of this change is <u>March 1, 2016.</u>

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 23rd day of June, 2016.

Issued to and Accepted by:

<u>Walmart, Inc.</u>
**Sponsor**

By _____
**Signature and Title of Officer**

**Liberty Life Assurance Company of Boston**

*Nancy Goodwin*

**Form ADOP-AMENDMENT**                                    **Delete/Add Policy Pages**

# AMENDMENT NO. 2

It is agreed the following changes are hereby made to this policy:  GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Removed severance under Other Income Earnings in Section 4 | Form ADOP-LTD-23 R (1) | Form ADOP-LTD-23 |

The effective date of this change is <u>January 1, 2016.</u>

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 1st day of November, 2016.

Issued to and Accepted by:

<u>Walmart, Inc.</u>
**Sponsor**

By _____
**Signature and Title of Officer**

**Liberty Life Assurance Company of Boston**

*Nancy Goodwin*

**Form ADOP-AMENDMENT**                                    **Delete/Add Policy Pages**

# AMENDMENT NO. 3

It is agreed the following changes are hereby made to this policy:  GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Revised the Long Term Disability Own Occupation Duration in Sections 1 and 2. | Form ADOP-SCH-3 R (2) Form ADOP-DEF-3.1 R (1) | Form ADOP-SCH-3 R (1) Form ADOP-DEF-3.1 |
| Added a work incentive provision to the Long Term Disability Partial Disability benefit in Section 4. | Form ADOP-LTD-5.8 R (1) | Form ADOP-LTD-5.8 |

The effective date of this change is January 1, 2017.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 15th day of March, 2017.

Issued to and Accepted by:

Walmart, Inc.
**Sponsor**

By _____
             **Signature and Title of Officer**

**Liberty Life Assurance Company of Boston**

*Nancy Goodwin*

# AMENDMENT NO. 4

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Revision to the Long Term Disability Minimum Benefit, revision to the Survivor Benefit, and a revision to the Long Term Disability Pre-Existing Condition Exclusion | Form ADOP-SCH-4 R (1) Form ADOP-LTD-10 R (1) Form ADOP-EXC-5 R (1) | Form ADOP-SCH-4 Form ADOP-LTD-10 Form ADOP-EXC-5 |

The effective date of this change is January 1, 2018.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 22nd day of September, 2017.

Issued to and Accepted by:

Walmart, Inc.
**Sponsor**

By _____

           **Signature and Title of Officer**

**Liberty Life Assurance Company of Boston**

**Form ADOP-AMENDMENT**          **Delete/Add Policy Pages**

## AMENDMENT NO.  5

It is agreed the following changes are hereby made to this policy:  GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---------|-----------|-----------|
| Revision to the Survivor Benefit waiting period applicable to classes B1, B2, C1, C2, D1, D2, D3, D4, added an Associated Company, Removed the Gender Change Exclusion, and revised the Short Term Disability definition of Disability. Exception processing draft | Form ADOP-SCH-1 R (1) Form ADOP-DEF-2 Form ADOP-LTD-10 R (2) Form ADOP-EXC-1 | Form ADOP-SCH-1 Form ADOP-DEF-2 Form ADOP-LTD-10 R (1) Form ADOP-EXC-1 |

The effective date of this change is January 1, 2018.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 5th day of December, 2017.

Issued to and Accepted by:

Walmart, Inc.
**Sponsor**

By _____

**Signature and Title of Officer**


**Liberty Life Assurance Company of Boston**


*Nancy Goelwin*

**Form ADOP-AMENDMENT**                                            **Delete/Add Policy Pages**

## AMENDMENT NO. 6

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---|---|---|
| Removed the Short Term Disability severance offset | Form ADOP-STD-7 R (1) | Form ADOP-STD-7 |

The effective date of this change is January 1, 2018.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 3rd day of April, 2018.

Issued to and Accepted by:

<u>Walmart, Inc.</u>
**Sponsor**

By _____
                 **Signature and Title of Officer**

**Liberty Life Assurance Company of Boston**

*Nancy Goelwin*

**Form ADOP-AMENDMENT**                      **Delete/Add Policy Pages**

# AMENDMENT NO. 7

It is agreed the following changes are hereby made to this policy: GD/GF3-850-290765-01

| Changes | Additions | Deletions |
|---------|-----------|-----------|
| Revised the Sponsor's legal name | Face Page R (1)<br>Form ADOP-SCH-1 R (2) | Face Page<br>Form ADOP-SCH-1 R (1) |

The effective date of this change is <u>February 1, 2018.</u>

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 3rd day of April, 2018.

Issued to and Accepted by:

<u>Walmart, Inc.</u>
**Sponsor**

By _____
**Signature and Title of Officer**

**Liberty Life Assurance Company of Boston**

*Nancy Goodwin*

**Form ADOP-AMENDMENT**                                        Delete/Add Policy Pages

# AMENDATORY RIDER 1

This rider forms a part of the Policy  GD/GF3-850-290765-01

The effective date of this Rider is March 1, 2013

| In compliance with Arkansas Department of Insurance Rule 101, the provision displayed on Form ADOP-GNP-2  Interpretation of the Policy has been replaced in its entirety with the following text: |
| --- |
| Interpretation of the Policy |
| Liberty shall possess the authority, in its discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding. This discretionary authority should not be construed to limit the legal action that may be taken by a Covered Person in accordance with the Legal Action provision of the policy and any applicable state or federal law. |

In all other respects, the Policy remains the same.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02116

SECRETARY                                        PRESIDENT

CERTIFIED MAIL

7018 1130 0002 1119 7594



UNITED STATES POSTAGE
$014.50⁰
PITNEY BOWES
02 1P
0000755760  DEC 19 2019
MAILED FROM ZIP CODE 39401

HICKS LAW FIRM, PLLC
ATTORNEYS AT LAW

211 South 29ᵗʰ Ave., Suite 201 (39401)
Post Office Box 18350
Hatliesburg, MS 39404-8350

RETURN RECEIPT REQUESTED

Lincoln Life Assurance Company of Boston
c/o Corporation Service Company, Registered Agent
84 State Street
Boston, MA 02109